**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman ANJELIKA L. FAUL**
**United States Air Force**

**ACM 38486**

**10 July 2014**

Sentence adjudged 30 July 2013 by GCM convened at Sheppard Air Force Base, Texas. Military Judge: Natalie D. Richardson (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 29 months and 26 days, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Colonel Don M. Christensen and Gerald R. Bruce, Esquire.

Before

MARKSTEINER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

PER CURIAM:

At a general court-martial composed of a military judge sitting alone, the appellant pled guilty to drunken operation of a vehicle and involuntary manslaughter, in violation of Articles 111 and 119, UCMJ, 10 U.S.C. §§ 911, 919. A military judge accepted her pleas, and pursuant to a pretrial agreement, the convening authority withdrew and dismissed a second specification of drunken operation of a vehicle. The military judge sentenced the appellant to a bad-conduct discharge, confinement for 30 months, and reduction to E-1. The convening authority approved the sentence as adjudged, with the exception of disapproving four days of confinement to compensate for time the appellant spent in a civilian confinement facility after her arrest.

The appellant submitted this case without assigning any specific error. We affirm the findings and sentence in this matter but issue this opinion to briefly document the circumstances behind this tragic case.

*Background*

In the morning hours of 16 June 2012, Mr. Michael Brown, a respected civilian employee in the Logistics Readiness Squadron at Sheppard Air Force Base, lost his life when the appellant drove drunk in Wichita County, Texas. This incident marked the second time the appellant drove drunk in the span of a few hours.

The previous evening, the appellant and some fellow Airmen met at the appellant's apartment. Before departing for a local night club, they began to drink alcohol. Once at the club, they continued to drink. The appellant drank until the club closed at 0200. She later estimated, in her providency inquiry, that she consumed two mixed drinks at her apartment—each containing two servings of alcohol—one mixed drink at the club and another five to ten shots at the club. She testified that Staff Sergeant (SSgt) John Mata bought many of the shots for her, even though she told him to stop buying them. The appellant and a group then returned to her apartment. To get there, she rode with another Airman who had been drinking. At her apartment, she consumed another drink.

The appellant then received a text message from a friend who asked if she could come to the appellant's apartment. That friend began driving to the apartment—even though she had also been drinking—but got lost along the way. The appellant decided to drive to pick up the friend, bringing SSgt Mata along as a passenger. The appellant found her friend and returned without incident. During this trip, the appellant was not stopped, and no blood or breath alcohol test was administered at that time. However, she admitted in her providency inquiry and in her stipulation of fact that she was drunk and her ability to control the vehicle was impaired. This incident forms the basis for the charge and specification of drunken operation of a vehicle.

Back at the apartment, the group continued drinking. SSgt Mata departed the party in a cab during the night. The appellant consumed at least four more drinks. By around 0600, the party had wound down. The appellant received a text message from a friend saying she was at the hospital with another friend who was experiencing stomach pains. The friend told the appellant she did not need to come to the hospital, but the appellant said she was coming anyway. The friend, who had seen the appellant earlier in the evening, asked if she was "ok to drive." The appellant said she was and drove off in her car.

Along the way to the hospital, the appellant called her friend saying she could not find the hospital. As she drove north along Interstate 44 toward Exit 3C, she realized she

had passed the hospital and needed to get on I-44 South. She pulled over onto the right shoulder, and instead of properly exiting and re-entering the interstate to go south, she veered left across the northbound lanes, as if to make a U-turn through the grass median. In doing so, she drove into the path of Mr. Brown, who was riding his motorcycle to a weekly Saturday breakfast with his friends. He attempted to avoid a collision by swerving into the left-hand lane and applying his brakes, but he could not avoid the appellant's unexpected movement and collided with the driver-side door of her car. He died shortly after being rushed to the hospital.

The following depiction was admitted at trial to demonstrate the appellant's reckless and deadly actions:



**Pros. Ex. 1, 7.**

The following photograph was one of several admitted at trial to demonstrate the results of the appellant's actions:



PAGE ___ OF ___ PAGES

**Pros. Ex. 1, 8.** The northbound lanes of I-44. The appellant's car is in the median facing south. Mr. Brown's motorcycle is in the center of the northbound lanes.

Police took a blood draw from the appellant at the hospital, over her objection. The test measured her blood alcohol concentration at .241 grams of alcohol per 100 milliliters of blood. According to the officer who was present during the blood draw, the appellant kept interrupting him as he read the statutory warning; she was laughing, joking, and making statements about Mr. Brown such as, "He's the one who hit me," "I didn't do anything wrong," and "I bet he's not sober."[1]

Soon after the Article 32, UCMJ, 10 U.S.C. § 832, hearing in this matter, the appellant was arrested for public intoxication. Outside an establishment called "Texas Showgirls," the appellant caused a disturbance by attempting to fight people while she was clearly intoxicated.

---

[1] Mr. Brown's blood was also drawn, and there was no alcohol in his system.

We have reviewed the entire record of trial in this matter, giving particular attention to this Court's responsibility to "affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We recognize that several Airmen and at least one non-commissioned officer share responsibility for the terribly irresponsible decisions made that night. The cavalier attitude demonstrated by this group toward the dangers of drinking and driving reflects poorly on each Airman present. Nonetheless, the appellant's actions before, during, and after her offense of taking Mr. Brown's life demonstrate particularly aggravating circumstances and a lack of rehabilitative potential. Having given individualized consideration to this appellant on the basis of the nature and seriousness of her offense and her character, we determine that the appellant's sentence is appropriate and no issues warranting relief are present in this case.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court